UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JEFFREY PENNER,

        Plaintiff,

        v.           CAUSE NO. 3:23-CV-633-JD

ZAMBRANA, et al.,

        Defendants.

OPINION AND ORDER

Jeffrey Penner, a prisoner without a lawyer, is proceeding in this case "against Officer Smith, Sgt. Thomas, and Lt. Zambrana in their individual capacities for compensatory and punitive damages for not protecting him from attack by a fellow inmate on March 14, 2023, in violation of the Eighth Amendment[.]" ECF 7 at 2. The defendants filed a motion for summary judgment. ECF 54. Penner filed a response, and the defendants filed a reply. ECF 66, ECF 67. The summary judgment motion is now fully briefed and ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v.*

*Moore*, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading but must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009).

The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id*. at 833. To establish a failure-to-protect claim, the plaintiff must provide evidence "(1) that he was incarcerated under conditions posing a substantial risk of serious harm and (2) that the defendants acted with deliberate indifference to his health or safety." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (quotation marks omitted). To meet this standard, the plaintiff must show the defendant "had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Id*.; *see also Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015) (the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference"). In the context of failure to protect cases, the Seventh Circuit has equated "substantial risk" to "risks so great that they are almost certain to materialize if nothing is done." *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005). In such cases, "a prisoner normally proves actual

knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996).

The defendants provide affidavits, in which they attests to the following facts: During all relevant times, the defendants worked at Westville Correctional Facility ("WCF") and were assigned to the Protective Custody Unit ("PCU"). ECF 54-1 at 1; ECF 54-2 at 1; ECF 54-3 at 1. On March 7, 2023, Penner and another inmate named Andre Jefferson were both moved from their respective housing units into the PCU. ECF 54-1 at 2; ECF 54-2 at 2; ECF 54-3 at 2. At that time, the defendants were not aware of any history of problems between Penner and Jefferson. *Id.* Over the next week, between March 7 and March 14, the defendants were not aware of any incidents that occurred between Penner and Jefferson. *Id.*

On March 14, 2023, the defendants were all on shift in the PCU. ECF 54-1 at 2; ECF 54-2 at 2; ECF 54-3 at 2. At that time, the defendants still were not aware of any problems between Penner and Jefferson. ECF 54-1 at 2; ECF 54-2 at 2; ECF 54-3 at 2. Specifically, Jefferson had not made any threats to any of the defendants related to Penner or any other inmate, and Penner had not informed any of the defendants of any threat to his safety or any issue he had with Jefferson. ECF 54-1 at 1-2; ECF 54-2 at 1; ECF 54-3 at 1-2. At some point on March 14, Jefferson told Officer Smith that he did not want to be in the PCU. ECF 54-1 at 2. It is unclear what time on March 14 this conversation took place. Officer Smith did not interpret Jefferson's statement to be a threat against Penner or any other inmate, as many inmates who are held in the PCU often state they do not want to be there. *Id.* Jefferson stated only that he did not want to

3

be in the PCU, and did not make any threats or indicate he had any problem with Penner or any other inmate. *Id.*

Later that day, around 2:30 p.m., Jefferson approached Penner in the PCU dayroom and asked to talk to him for a minute. ECF 1 at 2; ECF 54-5. Jefferson and Penner walked from the dayroom to the PCU's living area, at which point Jefferson punched and choked Penner. *Id.* Penner left the PCU's living area and told Officer Smith he'd been attacked by Jefferson. ECF 1 at 2; ECF 54-1 at 2. Penner was seen by medical staff and received treatment, while Jefferson was written up and moved into another housing facility. ECF 54-3 at 2-3; ECF 54-9. The defendants each attest they were not present when Jefferson attacked Penner, did not witness the attack firsthand, did not have any advanced warning or reason to believe that Jefferson was going to attack Penner, and did not have any opportunity to prevent or intervene in the attack. ECF 54-1 at 2-3; ECF 54-2 at 2; ECF 54-3 at 2-3.

The defendants argue summary judgment is warranted in their favor because there's no evidence they had actual knowledge of a substantial risk of harm to Penner prior to the attack. ECF 55 at 6-10. As discussed above, Penner must provide evidence that, at the time of Jefferson's attack on March 14, (1) Penner was incarcerated under conditions posing a "substantial risk" of serious harm and (2) the defendants had actual knowledge of that risk. In his summary judgment response, Penner argues the defendants had actual knowledge of the risk of violence posed by Jefferson and could have prevented the assault for two reasons.

4

First, Penner argues the defendants had knowledge of the risk of violence posed by Jefferson because Jefferson was "a known problem at Westville Correctional." ECF 66 at 1. But this falls short of the standard that Penner must show he complained to the defendants about a "specific threat to his safety." *See Pope*, 86 F.3d at 92. Specifically, Penner does not explain how he knows that Jefferson was a "known problem at Westville Correctional," nor does he allege that that information was known to the defendants. Rather, Penner does not dispute the defendants' attestations that Penner never informed them that he had any problem with Jefferson or that he feared for his safety. *See* ECF 54-1 at 2; ECF 54-2 at 1-2; ECF 54-3 at 2. As such, Penner's assertion that Jefferson was a "known problem" at WCF describes at most a generalized risk of violence and does not show the defendants had actual knowledge of a substantial risk of serious harm to Penner. *See Pope*, 86 F.3d at 92; *Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000) (holding that "a deliberate indifference claim cannot be predicated merely on knowledge of general risks of violence").

Second, Penner argues the defendants had actual knowledge of the risk of violence posed by Jefferson because Jefferson told the defendants he would assault an inmate if they did not let him out of the PCU. ECF 66 at 1. Specifically, Penner argues that "Jefferson went up to Officer Smith before the assault and told him he was gonna fuck somebody up if he was not moved," and Sgt. Thomas "told Jefferson to do what he had to do." *Id.* However, Penner does not provide any foundation for this testimony. Specifically, Penner does not explain when this conversation took place, and does not explain how he has personal knowledge of this alleged conversation. *See* Fed. R. Evid.

5

602 (providing that "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). In his complaint, Penner asserted this conversation between Jefferson and the defendants took place on March 7, the day he and Jefferson arrived in the PCU and a full week before the assault. ECF 1 at 2. In their summary judgment motion, the defendants argue and provide evidence this conversation could not have taken place as Penner described, as Officer Smith and Lt. Zambrana were not working on March 7, and Sgt. Thomas was working that day but was assigned to other duties. ECF 55 at 6-7; ECF 54-6 (shift rosters from March 7, 2023, and March 14, 2023). The defendants also argue Penner has no foundation to provide this testimony, as there is no evidence Penner was a witness or party to this alleged conversation or had any firsthand knowledge that the conversation took place. ECF 55 at 7-8; *see* Fed. R. Evid. 602. In his summary judgment response, Penner does not respond to any of these arguments. *See* ECF 66 at 1. He does not explain when this alleged conversation between Jefferson and the defendants took place, and does not argue or provide evidence he was a witness or a party to the conversation or otherwise had any firsthand knowledge of the

conversation. *See id.* As such, Penner has not provided any admissible[1] evidence showing that Jefferson told the defendants he would assault an inmate if he was not moved out of the PCU.

Moreover, even assuming Penner's testimony about the conversation between Jefferson and the defendants is admissible, it does not show the defendants had actual knowledge of a "substantial risk of serious harm" to Penner. Specifically, accepting as true that Jefferson told Officer Smith that he wanted to be moved out of the PCU and would "fuck somebody up" if he was not moved, there's no evidence Officer Smith knew this threat posed a "substantial risk" to Penner's safety such that the risk was "almost certain to materialize" if nothing was done. Rather, the evidence shows only that Jefferson made a generalized threat on March 7, a week before the assault, and did not threaten Penner or any other inmate specifically. It's undisputed Jefferson never made any threats directly against Penner and that Penner never informed the defendants about any threat to his safety, and Officer Smith could have reasonably believed Jefferson's statement that he would "fuck somebody up" if he was not moved out of the PCU was either (1) a threat against correctional staff or (2) an empty threat

---

[1] To be sure, "the Federal Rules of Civil Procedure allow parties to oppose summary judgment with *materials* that would be inadmissible at trial so long as facts therein could later be presented in an admissible form." *Olson v. Morgan*, 750 F.3d 708, 714 (7th Cir. 2014) (emphasis added). But while "[t]he evidence need not be admissible in form," it "must be admissible in content." *Wheatley v. Factory Card & Party Outlet*, 826 F.3d 412, 420 (7th Cir. 2016); *see also Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) ("a court may consider only admissible evidence in assessing a motion for summary judgment"); *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996) (evidence relied upon at the summary judgment stage must be competent evidence of a type otherwise admissible at trial). Because Penner's testimony is inadmissible under Fed. R. Evid. 602 due to his lack of personal knowledge, and not because of the form in which he presented the evidence, his testimony cannot properly oppose a summary judgment motion. *See Logan v. Caterpillar, Inc.*, 246 F.3d 912, 925 (7th Cir. 2001) (a party may not rely upon inadmissible testimony to oppose a motion for summary judgment).

made in an attempt to get transferred out of the PCU. *See Est. of Miller by Chassie v. Marberry*, 847 F.3d 425, 428 (7th Cir. 2017) ("Prisoners can be manipulative, using deceit to obtain advantages; guards are accordingly entitled to be skeptical"); *Jackson v. Frank*, No. 20-cv-035-DWD, 2023 WL 6311517, at *3 (S.D. Ill. Sept. 28, 2023) (to prove actual knowledge of impending harm, the plaintiff must show the defendants had knowledge of "a specific, credible and imminent risk of serious harm," not just "a generalized, vague, or stale concern about one's safety") (*citing Gevas*, 798 F.3d at 480). Thus, Penner's testimony about the alleged conversation between Jefferson and the defendants, if admissible, does not show the defendants had actual knowledge Jefferson posed a "substantial risk of harm" to Penner.

Accordingly, there is no evidence in the record by which a reasonable jury could conclude the defendants had actual knowledge of a substantial risk of harm to Penner prior to the attack by Jefferson.[2] Summary judgment is therefore warranted in favor of the defendants.

For these reasons, the court:

(1) GRANTS the defendants' motion for summary judgment (ECF 54); and

(2) DIRECTS the clerk to enter judgment in favor of the defendants and against Jeffrey Penner and to close this case.

---

[2] Because the court concludes there's no evidence the defendants had actual knowledge of a substantial risk of harm to Penner, it does not reach the defendants' alternative arguments that (1) Penner did not face a substantial risk of harm prior to the attack, (2) they were not deliberately indifferent to that risk, and (3) they are entitled to qualified immunity.

SO ORDERED on August 29, 2025

/s/JON E. DEGUILIO  
JUDGE  
UNITED STATES DISTRICT COURT